**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MIRELLA S. FIORENTINO,<br><br>    Plaintiff,<br><br>        v.<br><br>RIO MAR ASSOCIATES, LP, SE; ET AL.,<br><br>    Defendants. | Civil No. 01-2653(PG) |

**OPINION AND ORDER**

Before the Court is plaintiff's "Motion in Limine Regarding Purported Bodysurfing Activities." (Docket No. 96.) For the following reasons, the Court **GRANTS** plaintiff's motion.

**BACKGROUND**

From December 7 to December 9, 2002, Mirella Fiorentino ("plaintiff") and her late husband, Mr. Edward Michael Fiorentino ("Mr. Fiorentino"), were to be guests at the Westin Rio Mar Beach Resort & Casino ("Rio Mar"). (Docket No. 27, at 5.) On December 7, 2002, around 3:00 in the afternoon, Mr. Fiorentino went for a swim at the Rio Mar beach. (Id.) Mr. Fiorentino went into the beach to approximately fifty (50) feet from the shoreline, when he was suddenly hit by a wave which caused him to topple over and strike his head and neck on the ocean bottom rendering him partly unconscious. (Id.) Mr. Fiorentino's motionless body was taken out of the water by several bathers. Two lifeguards who where on duty responded to the cries for help and assisted the guests, some of which were doctors, in the resuscitation efforts. After Mr. Fiorentino regained consciousness, he was transported to Hospital San Pablo del Este to receive medical attention. (Id. at 6.)

As a result of the accident, Mr. Fiorentino's spinal chord was severely injured which rendered him quadriplegic and permanently disabled. (Id. at 6.)

Civ. No. 01-2653 (PG)                                                    Page 2

On December 15, 2001, plaintiff and Mr. Fiorentino filed suit against Rio Mar and Hospital San Pablo del Este. (See Docket Nos. 1 & 2.) Ten months later, Mr. Fiorentino passed away. (See Docket No. 21.) Plaintiff then filed an amended complaint on her behalf and as the sole heir of Mr. Fiorentino.

Following several procedural events, plaintiff settled her claims with Hospital San Pablo del Este. (See Docket Nos. 56, 73, 78, 85, 86, 87, 88, 91, 92, 93, 94, 95, 97, & 98.) Settlement was not viable with Rio Mar, thus, the case was set for trial for August 15, 2005. (Docket No. 94.)

Plaintiff files a motion *in limine* asking the Court to issue an order barring defendants from offering any evidence, in the form of testimony or expert opinion, and from making any arguments, comments, or statements, whether directly or indirectly, to the effect that Mr. Fiorentino was "taking waves", bodysurfing, or body whomping at the time of the accident. Her motion comes as a result of Rio Mar's expert witnesses' report which states that the injuries Mr. Fiorentino sustained at the Rio Mar beach on December 7, 2001, resulted from activities such as bodysurfing or body whomping purportedly undertaken by him at the time of the accident.

## DISCUSSION

Expert testimony is admitted when: (1) it is based upon sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; see Marcano Rivera v. Turabo Medical Center Partnership, No. 04-2494, 2005 WL 1654340, at *7 (1st Cir. July 15, 2005). "Rule 702 imposes a gate-keeping function on the trial judge to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Marcano Rivera, 2005 WL 1654340, at *7 (internal quotations omitted). Judges must "ensure that the following requirements are fulfilled before an expert can give a testimony: (1) the expert is qualified to testify as an expert in a

Civ. No. 01-2653 (PG)                                                      Page 3

certain field; (2) the testimony is based on specialized knowledge; and (3) the testimony is such that it will assist the trier of fact in comprehending and determining the fact in issue. Figueroa v. Simplicity Plan de Puerto Rico, 267 F.Supp.2d 161, 164 (D.P.R. 2003).

> Thus, a testimony or report is deemed to be beneficial if it can diagnose and give an opinion of the type of event that could have caused plaintiffs' conditions or aggravated any of plaintiffs' conditions. However, an expert witness cannot offer his evaluation of the truth. To do so is to question credibility, a right only reserved for the trier of fact.

Id. (internal quotations omitted). The party who intends to bring the expert witness "has the burden of proving that its expert will assist the trier of fact by sharing scientific, technical, or other specialized knowledge." Id. See generally Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

On October 29, 2004, expert witnesses for Rio Mar, Dr. Jorge E. Capella and Dr. Jorge F. Bauza-Ortega ("the experts"), two oceanographers, issued their initial report titled "Analysis of the Wave Conditions at the Rio Mar Beach on December 7, 2002." (See Docket No. 96, Exhibit 1.) In the report, both experts conclude that the injuries Mr. Fiorentino sustained resulted from activities such as bodysurfing or body whomping, purportedly undertaken by him at the time of the accident. They base their conclusion on a statement made by one of the lifeguards on duty the day of the accident, Julio Santiago.

In his deposition, Mr. Santiago declared that two of the gentlemen who assisted in transporting Mr. Fiorentino out of the water told him that he had been "taking waves" when the accident occurred. (Docket No. 99, Exhibit 2 at 31.) The experts interpreted this statement to mean that Mr. Fiorentino had been either bodysurfing or body whomping which can result in serious neck injury when the swimmer's back strikes the bottom. (See Docket No. 96, Exhibit 1, p. 17.) The experts ultimately concluded that Mr. Fiorentino's accident may have most likely resulted due to the aquatic

Civ. No. 01-2653 (PG)                                                   Page 4

activities performed by him and not by the ocean waves or an act of nature. (Docket No. 96, Exhibit 1 at 4 & 18.)

Plaintiff moves to exclude the expert witness' testimony regarding the alleged bodysurfing or body whomping activities arguing there is no admissible evidence or factual basis to support said conclusion.

Rio Mar opposes plaintiff's request alleging that under Fed.R.Evid, 803(2), the statement reported by the lifeguard, Mr. Santiago, during his interview with the experts, falls within the excited utterance exception to the hearsay rule. Furthermore, that under Fed.R.Evid. 703, the information relied upon by the experts was of a type reasonably relied upon by experts in the particular field in forming an opinion on the subject, and that the experts conclusions are supported or corroborated by other independent bases including the testimony of the plaintiff herself.

Federal Rule of Evidence 803 provides an explicit exception to the hearsay rule: "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" shall not be excluded regardless of whether the declarant is available as a witness. Fed.R.Evid. 803(2). "In order to qualify as an 'excited utterance', a statement must meet the following criteria: 1) it must have been caused by a startling event; 2) it must occur when the declarant is under the stress or excitement of the event; and, 3) it must relate to that startling event." Schroeder v. de Bertolo, 942 F.Supp. 72, 77 (D.P.R. 1996)(citing Martinez v. McCaughtry, 951 F.2d 130, 134-35 (7th Cir. 1991).

Rio Mar argues that Mr. Santiago's statement to the experts is inherently trustworthy because it meets the excited utterance criteria. Rio Mar claims that the gentlemen who assisted in pulling Mr. Fiorentino out of the water were experiencing a startling event or condition because they were helping to save his life which qualifies as a starling event.

Furthermore, that as demonstrated by Mr. Santiago's deposition testimony, the pertinent statement was made while the starling event was occurring and within moments of Mr. Fiorentino's accident. Lastly, that the statement is related to the event because these men, who allegedly witnessed the accident, reported what they saw during their efforts to resuscitate Mr. Fiorentino.

At the outset, it must be clarified that Rio Mar's experts did not base their opinion of what the men who aided Mr. Fiorentino the day of the accident declared, but on what Mr. Santiago stated in his deposition these men allegedly told him. Therefore, Rio Mar's argument that Mr. Santiago's statement to defendants' expert is an excited utterance is misplaced inasmuch as his statement was made a year and half after the event took place. See White v. Illinois, 502 U.S. 346, 355-56 (1992)("Excited utterances are considered reliable because the declarant has not had the opportunity to reflect on the consequence of his exclamation.") Rio Mar basically asks the Court to extend the excited utterance exception apparently applicable to the gentlemen's statement, to Mr. Santiago's deposition testimony which clearly does not meet Rule 803(2)'s requirements. If Rio Mar intends to sit the expert witnesses on the stand to testify that Mr. Santiago told them that the gentlemen at the beach told him that Mr. Fiorentino was "catching waves", Rio Mar must proffer two different, independent, and applicable exceptions to each hearsay statement for each to be admitted. See Fed.R.Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.")

Upon reviewing the record the Court finds that both statements are inadmissible hearsay within the context of the expert witness' testimony.

A review of the reports and statements drafted following the accident reveals that no where do either the lifeguards, the security guards, the

Civ. No. 01-2653 (PG)                                                Page 6

guests, or any other person at the scene during and after the event reported that Mr. Fiorentino had been bodysurfing, body whomping, or "taking waves". The resort's Incident Report indicates that guests Shawn Taft and Paul J. Tuluvath assisted Mr. Fiorentino. It does not, however, indicate whether these were the men who told Mr. Santiago that Mr. Fiorentino had been "catching waves" and neither does Mr. Santiago indicate in his statement attached to the report that these were the men who told him so. The report also mentions two other guests who were apparently involved in the events following Mr. Fiorentino's accident: an unnamed doctor and Mr. Drezin. The report does not state whether these guests witnessed the accident or whether they declared having seen Mr. Fiorentino "catching waves", bodysurfing, or body whomping. In fact, none of the reports drafted on the day of the accident indicate that anyone at the beach during and after the accident saw Mr. Fiorentino engaging in any sort of aquatic activity that could be interpreted as bodysurfing or body whomping. Furthermore, in Mr. Santiago's statement to Continental Claims Service, Inc., which was also drafted the day of the accident, he never mentioned that the men who were dragging Mr. Fiorentino's body out of the water told him that he had been "taking waves". (See Docket No. 96, Exhibits 2, 3 & 4).

Mr. Santiago first mentioned the gentlemen's statement at his deposition taken on March 14, 2003. Mr. Santiago did not, however, identify who the men were, or the circumstances surrounding their statement. Furthermore, Mr. Taft, who was the guest who was in the water when the accident occurred and was later deposed, testified that Mr. Fiorentino had not been playing in the waves or jumping around in the water and reiterated that they were just standing in the water. (See Docket No. 6, Exhibit 5, at 54.) He was specifically asked whether Mr. Fiorentino had been bodysurfing and Mr. Taft unequivocally said no. (Id. at 57.)

Civ. No. 01-2653 (PG)                                                    Page 7

In sum, the record lacks the necessary factual basis regarding the identity of the men, the precise moment they made the alleged statement, the context, and circumstances surrounding it for the Court to determine whether the statement meets Rule 803's requirements.

Nonetheless, even assuming that the statement allegedly made by the gentlemen to Mr. Santiago does fall within the excited utterance exception, the experts' report based on Mr. Santiago's statement would still be inadmissible hearsay inasmuch as none of the recognized exceptions to the hearsay rule apply to Mr. Santiago's statement.

Rio Mar, nevertheless, insists that the expert's report is admissible pursuant to Federal Rule of Evidence 703 because the facts or data upon which the experts based their opinion do not have to be admissible in evidence in order for their opinion or inference to be admitted, if they are the type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. See Fed.R.Evid. 703. Rio Mar argues that the experts can rely of Mr. Santiago's hearsay statement because expert witnesses can rely on witness interviews and witness' sworn testimony in developing their ultimate opinions.

Although undisputed that an expert may base his or her testimony on inadmissible facts or data, Rule 703 "does not allow the data itself." Bado-Santana v. Ford Motor Co., 364 F.Supp.2d 79, 91-92 (D.P.R. 2005)(citing Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 728-729 (6th Cir. 1994) (holding that experts may rely on inadmissible material in forming the basis of opinions, but inadmissible material may not be admitted for truth of the matter asserted.) In other words, the rule simply permits an expert witness to rely on this type of information to base his conclusions or inferences but does not ... allow the admittance of the evidence otherwise inadmissible." Bado-Santana, 364 F.Supp.2d at 92. Accordingly, the expert oceanographers can base their conclusions on Mr. Santiago's inadmissible hearsay statement, however, Rio Mar may not

Civ. No. 01-2653 (PG)                                                  Page 8

introduce Mr. Santiago's statement solely because the experts used it to form their opinion. Furthermore, in order for the statement to be disclosed to the jury, the Court must first determine whether its probative value in assisting the jury to evaluate the expert's opinion substantially outweighs its prejudicial effect. See Fed.R.Civ.Evid. 703.

A review of the evidence in the record shows that the probative value of Mr. Santiago's testimony within the context of the experts' report, is substantially outweighed by its prejudicial effect in confusing the jury in light of the speculative nature of the experts' conclusion. As evidenced by the preceding discussion, both statements, the one allegedly made by the men to Mr. Santiago, as well as Mr. Santiago's later testimony, are both inadmissible hearsay and thus, not trustworthy. Moreover, the experts did not base their conclusion on Mr. Santiago's testimony but on their interpretation of his testimony. The experts' report states:

> According to Mr. Julio Santiago, on-duty hotel lifesaver [sic] that assist [sic] Mr. Fiorentino in the beach, the two gentlemen that were transporting Mr. Fiorentino our of the sea said to him that Mr. Fiorentino were [sic] "taking waves" when the accident occur [sic]. To our judge [sic] "taking wave" [sic] can be **interpreted as a form** of bodysurfing or body whomping.

(Docket No. 96, Exhibit 1 at 17)(emphasis added). Clearly, neither did Mr. Santiago or the men who allegedly made the statement indicate that Mr. Fiorentino had been bodysurfing or body whomping. They simply said he was "catching waves". Therefore, the experts witness' report is not only based on two unreliable hearsay statements but on speculative and conjectural conclusions as to what both the men at the beach and Mr. Santiago had intended "catching waves" to mean. "It is fundamental that expert testimony must be predicated on facts legally sufficient to provide a basis for the expert's opinion, thus, an expert should not be permitted to give an opinion that is based on conjecture or speculation from an insufficient evidentiary foundation." Damon v. Sun Co. Inc., 87 F.3d 1467,

Civ. No. 01-2653 (PG)                                                    Page 9

1474 (1st Cir. 1996)(internal citations omitted). Accordingly, the experts' testimony regarding the bodysurfing and body whomping activities should be excluded inasmuch as it is not based on sufficiently reliable facts or data. See Bado-Santana, 364 F.Supp.2d at 101.

Withal, Rio Mar argues that the evidence should not be excluded because the experts conclusions are supported or corroborated by other independent bases including the testimony of plaintiff herself.

Rio Mar argues that in her deposition, plaintiff testified that Mr. Fiorentino "looked like somebody who was bodysurfing" which plainly corroborates the excited utterances of the individuals who were helping Mr. Fiorentino as well as Mr. Santiago's sworn deposition testimony. A cursory review of plaintiff's deposition further supports this Court's conclusion to exclude the evidence.

In her February 3, 2004 deposition, plaintiff testified:

> Q. Were you at the area where the sand is?
>
> A. Yes. I was--
>
> Q. All of you were there?
>
> A. Yes. Well--well, where we were before, I was there, and I was sitting down. I wasn't on a lounge chair, I was kind of just sitting on the edge, waiting for them to go in the water and come out. And he walked in probably thigh high, I guess it was. I was watching, I was looking out there, and suddenly I just saw him come fac up--face down. His face was down, like it almost looked like somebody who was body surfing, you know how they look. And I got up, and I just started running to the beach and screaming, and I guess I--you know, I knew something was wrong, because I looked and thought, "My God what's he doing?" And the I--I just ran and I started screaming "Help".
>
> Q. And where was his friend?
>
> A. His friend was actually-
>
> Q. Close?
>
> A. --a little bit further down from him, and I didn't really see him because I think he was still under the water. Mike had popped up, you know, he was floating. So I started screaming, and Sean saw

> me screaming, and he realized something was wrong with Mike, so he kind of looked over, and he could see Mike floating. So then we pretty much -- I started screaming for help, and to get help.

(Docket No.102, Exhibit 1.) Clearly, plaintiff never said Mr. Fiorentino had been bodysurfing but that when came up floating and unconscious, he *looked like* someone who was bodysurfing. To conclude, based on plaintiff's deposition, that Mr. Fiorentino had been in fact bodysurfing when the accident occurred is unreasonable and borders on the ludicrous[1].

Lastly, Rio Mar argues that the experts cited scholarly material to support their contention that Mr. Fiorentino's cervical injuries are consistent with those found in bodysurfing accidents involving healthy, middle-aged to older men. The so-called scholarly literature the experts made reference to in their report is a study done in the year 1992 of 14 cervical spine injures sustained during bodysurfing accidents at the beaches around Ocean City, Maryland during the summers of 1987 and 1988. (See Docket No. 96, Exhibit 1 at 17.) The study concluded that bodysurfing is peculiarly hazardous to healthy, middle-aged men. Based on that data, the experts determined that Mr. Fiorentino's fateful accident may have resulted not from normal ocean conditions but mostly due to his aquatic activities "such as bodysurfing or body whomping that was **probably** executed by Mr. Fiorentino without the appropriate safety measurements [sic]" in light of the injuries exhibited by Mr. Fiorentino. (Id. at 18)(emphasis added). Rio Mar's experts, however, are not doctors in medicine, cervical spine trauma, or accident reconstruction. They are oceanographers, thus, cannot render opinions outside their field of expertise which is the science that deals with the oceans, and includes the delimitation of their extent, depth, as well as the physics and

---

[1] Indeed, plaintiff's deposition testimony further bolsters our conclusion with regards to the unreliability of the statement allegedly made by the two men who assisted Mr. Fiorentino at the beach. They too might have been misled by the way Mr. Fiorentino's body was floating.

Civ. No. 01-2653 (PG)                                                  Page 11

chemistry of their waters, and marine biology. <u>See</u> Webster's New Collegiate Dictionary 788 (8th ed. 1979). Furthermore, the only reason the experts discuss spinal injuries and bodysurfing is because of Mr. Santiago's statement, which we have already concluded is unreliable and inadmissible.

### **CONCLUSION**

WHEREFORE, the Court grants plaintiff's motion. Accordingly, Rio Mar's experts shall only testify as to the condition of the water and the waves the day of the accident but may not offer any evidence, in the form of testimony or expert opinions, or make any arguments, comments or statements, whether directly or indirectly, to the effect that Mr. Fiorentino was "taking waves", bodysurfing and/or body whomping at the time of the accident.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 9, 2005.

                                        S/JUAN M. PEREZ-GIMENEZ
                                        U. S. DISTRICT JUDGE