**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MIRELLA S. FIORENTINO,

    Plaintiff,

        v.                              Civil No. 01-2653(PG)

RIO MAR ASSOCIATES, LP, SE; ET AL.,

    Defendants.

## OPINION AND ORDER

Before the Court are several post-judgment motions filed by plaintiff, defendants and third-party defendant. For the following reasons, the Court **GRANTS** third-party defendants' motion to dismiss the cross claim **(Docket No. 150), DENIES** defendants' request to alter the Judgment **(Docket Nos. 137 & 138),** and **DENIES** plaintiff's motion to alter the judgment to include a finding of obstinacy. **(Docket No. 139.)**

## FACTUAL AND PROCEDURAL BACKGROUND

From December 7 to December 9, 2002, Mirella Fiorentino ("plaintiff") and her late husband, Mr. Edward Michael Fiorentino ("Mr. Fiorentino"), were to be guests at the Westin Rio Mar Beach Resort & Casino ("Rio Mar"). (Docket No. 27, at 5.) On December 7, 2002, Mr. Fiorentino went for a swim at the Rio Mar beach. (Id.) Mr. Fiorentino went into the beach to approximately fifty (50) feet from the shoreline, when he was suddenly hit by a wave which caused him to topple over and strike his head and neck on the ocean bottom rendering him partly unconscious. (Id.) Mr. Fiorentino's motionless body was taken out of the water by several bathers. Two lifeguards who where on duty responded to the cries for help and assisted the guests, some of which were doctors, in the resuscitation efforts. After Mr. Fiorentino regained consciousness, he was transported to Hospital San Pablo del Este to receive medical attention. (Id. at 6.) As a result of the accident, Mr. Fiorentino's spinal chord was severely injured which rendered him quadriplegic and permanently disabled. (Id. at 6.)

On December 15, 2001, plaintiff and Mr. Fiorentino filed suit against Rio Mar and Hospital San Pablo del Este. (See Docket Nos. 1 & 2.) Ten months later, Mr. Fiorentino passed away. (See Docket No. 21.) Plaintiff then filed an amended complaint on her behalf and as the sole heir of Mr. Fiorentino.

Civ. No. 01-2653 (PG)                                                    Page 2

Following several procedural events, plaintiff settled her claims with UHS of Puerto Rico Inc., d/b/a Hospital San Pablo del Este (hereinafter referred to as "UHS"). (See Docket Nos. 56, 73, 78, 85, 86, 87, 88, 91, 92, 93, 94, 95, 97, & 98.) Settlement was not viable with Rio Mar, thus, the case was set for trial for August 15, 2005. (Docket No. 94.) On August 19, 2005, the Jury returned a verdict in favor of plaintiff against the Rio Mar defendants in the total amount of $1,844,000.00. (Docket No. 133.) Following the entry of judgment, the parties filed the motions presently before the Court.

Rio Mar Associates, LP, SE; Rio Mar-GP SE[1]; PFP Golf Associates LP SE[2]; Tishman Caribbean Holdings, Inc.; THC of RM LP SE[3], Tishman Hotel Corporation; TRC-RM LP, SE; PFP Golf Management LP, SE, (hereinafter referred to as "the Rio Mar defendants") move to amend the Judgment pursuant to Fed.R.Civ.P. 59(e). (Docket No. 137.) They ask the Court to reduce the judgment by the amount of $1,400,000.00, paid by the settling defendant UHS, so as to reflect a judgment against them of only $444,000.00. The Rio Mar defendants later supplemented their request to amend the judgment[4]. (Docket No. 138.) Plaintiff opposes defendants' request. (Docket No. 142.)

Plaintiff also moves to alter the judgment to include a finding of obstinacy. (Docket No. 139.) She argues that the Rio Mar defendants' conduct in the case warrants a finding of obstinacy with the subsequent imposition of attorney's fees. Plaintiff insists that since the filing of the complaint, these defendants have denied liability, have negotiated with Plaintiff in bad faith, and have tried to introduce misleading evidence and allegations at trial. Therefore, she asks the Court to make a finding of obstinacy and impose prejudgment interest as well as attorneys fees in accordance with Rule 44.1(d), 44.3(b) of the Puerto Rico Rules of Civil Procedure. The Rio Mar

---

[1] Erroneously named as Rio Mar-GP LP, SE. (See Docket No. 81.)

[2] Erroneously named as PFP Golf Associates. (See Docket No. 81.)

[3] Erroneously named as THC of RM LP SE. (See Docket No. 81.)

[4] Defendants indicate that their motion is brought under Fed.R.Civ.P. 69(e). No such rule exits. Rule 69 has only subsections (a) and (b); there is no subsection (e). Accordingly, the Court presumes defendants meant Rule 59(e).

Civ. No. 01-2653 (PG)                                                    Page 3

defendants promptly filed an opposition. (Docket No. 140.)

Finally, UHS moves to dismiss the cross claim filed by the Rio Mar defendants against it. (Docket No. 150.)  UHS argues that pursuant to the Puerto Rico Supreme Court case of Zsendrey v. Hospicare, 2003 PRSC 25 (2003)[5], Rio Mar cannot proceed with its cross claim against it in light of the settlement between plaintiff and UHS. Rio Mar also opposes UHS's motion. (Docket No. 154.)

## DISCUSSION

### I.     Motion to Amend under Rule 59(e) (Docket Nos. 137 & 138.)

#### A.    Standard of Review

Federal Rule of Civil Procedure 59 states in pertinent part: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59. Motions to alter of amend judgment under Rule 59(e) are "aimed at *reconsideration*, not initial consideration." F.D.I.C. v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992)(quoting Harley-Davidson Motor Co., Inc., v. Bank of New England, 897 F.2d 611, 616 (1st Cir.1990)(citation omitted)(emphasis in original). Accordingly, a party should not used it to "raise arguments which could, and should, have been made before judgment issued." F.D.I.C., 978 F.2d at 16 (citations omitted). "Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence [and] may not be used to argue a new legal theory." Id. (citation omitted); see Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 72 (1st Cir. 2003). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2nd Cir. 1995). Motions under Rule 59(e) "cannot be used as a vehicle to relitigate matters already litigated and decided by the court. Standard Quimica De Venezuela v. Central Hispano Intern., Inc., 189 F.R.D. 202, 205, n.4 (citing Fine v. U.S. Department of Energy, 830 F.Supp. 570, 573 (D.N.M. 1993). In sum, "motions for reconsideration are extraordinary remedies which

---

[5] Plaintiff submitted an official translation of the case. (See Docket No. 158.)

Civ. No. 01-2653 (PG)                                                      Page 4

should be used sparingly and are typically denied." Villanueva-Mendez v. Nieves Vazquez, 360 F.Supp.2d 320, 324 (D.P.R. 2005)(internal quotations omitted). "Whether to alter a judgment under Rule 59(e) ... is a decision entrusted to the sound judgment of the trial court." Mariani-Giron v. Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir.1991).

### B. Analysis

The Rio Mar defendants ask the Court to reduce the judgment of $1,844,000.00 by the amount of $1,400,000.00, paid by the settling defendant UHS, so as to reflect a judgment against them of only $444,000.00. (Docket No. 137 & 138.) Rio Mar argues that pursuant to Puerto Rico law, and to avoid double recovery for a single injury, since UHS settled with plaintiff, that payment reduces Rio Mar's liability to plaintiff. Rio Mar supports its argument on the cases of Merced v. Gobierno de la Capital, 85 D.P.R. 552 (1962); Villarini Garcia v. Hospital del Maestro, 113 F.3d 5 (1st Cir.1997); and Jose Alicea Ponce et al. v. Ashford Presbyterian Hospital, 238 F.3d 20 (1st Cir.2001).

To the contrary, plaintiff argues that pursuant to the more recent case of Zsendrey v. Hospicare, 2003 PRSC 18, 158 P.R. Dec. 648 (2003), there is no right to an automatic offset of the amount obtained from a settlement. Instead, the Judge has to determine the degree of contribution of the remaining defendants, and determine the amount that matches the percentage of contribution that corresponds to the settling defendant. It is plaintiff's position that the evidence at trial showed there were two injuries and thus two different degrees of responsibility. First, the unstable C-2 fracture and disc herniation suffered by Mr. Fiorentino at the Rio Mar beach due to the latter's negligence and failure to warn of the dangerous ocean condition; and secondly, the possible aggravation of the unstable C-2 fracture due to the lack of appropriate treatment provided by UHS. There has been no determination as to the individual degree of contribution to plaintiff's damages by the Rio Mar defendants and UHS. Plaintiff argues that the Court should do so considering the evidence and the two injuries.

Plaintiff further avers that defendants did not ask the Court to instruct the jury to determine the total amount of the damages suffered by Plaintiff, and their individual degree of contribution to those damages in order to be

Civ. No. 01-2653 (PG)                                                        Page 5

able to recoup against UHS for that amount. She claims that defendants did not object to any of the instructions given to the jury. Therefore, they are estopped from raising the argument now.

     Having carefully reviewed the record, the settlement agreement between plaintiff and UHS, the evidence at trial, as well as the applicable law, the Court denies Rio Mar's request to reduce the judgment.  During the trial, the jury was only considering Rio Mar's participation in the event that caused plaintiff's damages. The only defendant at trial was Rio Mar. The evidence that was presented pertained to Rio Mar's negligence and involvement in the events leading to plaintiff's injury. The jury was instructed to consider the damages only as to Rio Mar, the defendant before them. Therefore, this is not a situation of double recovery because the jury was only considering the damages as to Rio Mar.

     The evidence proved that there were two injuries: (1) the unstable C-2 fracture and disc herniation; and (2)the possible aggravation of the unstable C-2 fracture. Dr. Thomas P. Naidich's undisputed testimony showed that had the C-2 fracture not occurred at the Hotel's beach, no neurological deficit or quadriplegia would have ever resulted. More so, Dr. Naidich specifically testified that even if UHS had timely diagnosed and treated the C-2 fracture, Mr. Fiorentino could still have been rendered quadriplegic. Indeed, Dr. Naidich's testimony clearly established that the damages suffered by Mr. Fiorentino were the direct result of the accident at the beach that caused the unstable C-2 fracture, which in turn produced swelling, displacement into a congenitally narrow spinal canal, and cord compression that, in turn, led to the neurological deficit or quadriplegia.

     Pursuant to the cases of Merced, 85 D.P.R. 552; <u>Rodriguez Sosa v. Cerveceria India</u>, 106 D.P.R. 479, 483 (197); <u>Resto Casillas v. Colon Gonzales</u>, 122 D.P.R. 644, 648 (1982); they jury was instructed as follows:

> If you find that Defendants, **[referring only to the Rio Mar defendants]**, due to their negligent acts or omission, are responsible for Mr. Fiorentino's accident on December 7, 2000, you must also determine that they are liable for all the damages sustained by him as a consequence of the medical services provided to him to treat the physical injures suffered at the beach to the Westin Rios Mar Beach Hotel and Casino.

(Jury Instructions, Docket No. 131 at 27.) With regards to the damages, the

Civ. No. 01-2653 (PG)                                                    Page 6

instructions read:

> If you find for the plaintiff, you must determine plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages mean the mount of money which will reasonably and fairly compensate the plaintiff for any injury you find was caused **by the defendant [referring only to the Rio Mar defendants]**. You should consider the following: The nature and extent of the injuries suffered by Michael Fiorentino; The disability, disfigurement, and loss of enjoyment of life experience by Michael Fiorentino; The mental, physical, emotional, pain and suffering experienced by Michael Fiorentino; The reasonable value of necessary medical care, treatment, and services received by Michael Fiorentino; The reasonable value of wages, earning, earning capacity, salaries, employment, business opportunities, and employment opportunities, lost as a consequence of Mr. Fiorentino's injuries; The reasonable value to necessary household help, services other than medical, and expense required to care for Mr. Fiorentino; Any loss of Michael Fiorentino's services, comfort, society and attention that Mrs. Fiorentino has suffered because of her husband's injury. The plaintiff has the burden of proving damages by a preponderance of the evidence, and it is for you to determine what damages, if any, have been proven.

(Id., at 31.)

The evidence at trial showed that Rio Mar did not properly warn Mr. Fiorentino of the conditions of the beach the day of the accident and that as a result of said failure Mr. Fiorentino suffered the accident. The evidence also showed that Mr. and Mrs. Fiorentino suffered greatly as a result of the accident and had to incur in considerable expenses to deal with Mr. Fiorentino's quadriplegia. The Jury had the opportunity to weigh and consider the evidence and determined that Rio Mar was liable for the accident and any injury sustained by Mr. Fiorentino as a consequence of the medical services provided to him to treat the physical injures suffered at the beach of the Westin Rio Mar Hotel. This finding is consonant with the holding of Merced v. Gobierno de la Capital, 85 D.P.R. 552 (1962). The Jury awarded damages accordingly.

In the Verdict Form the Jury answered "Yes" to the following question: "Do you find by a preponderance of the evidence that codefendant Westin Rio Mar Hotel was negligent and that said negligence was what cause the accident in which Mr. Fiorentino was involved on December 7, 2000?". (See Docket No. 133.) The Verdict Form then proceeded to list the questions regarding the

Civ. No. 01-2653 (PG)                                                    Page 7

specific amount damages for: Mrs. Fiorentino mental anguish, Mr. Fiorentino's mental and emotional pain, his bodily injuries; his medical expenses, loss of earnings, and loss of household services. At all times, the Jury was only considering the amounts attributable to the Rio Mar defendants which correspond to their participation in the events that caused plaintiff's injury and damages.

At trial, defendant did not ask the Court to instruct the jury to determine the total amount of the damages suffered by plaintiff and then determine their individual degree of contribution to those damages in order to be able to recoup against UHS. Neither did they request or submit a verdict form that included a section where the jury would determine the individual percentage of liability of UHS and the Rio Mar defendants. Compare Colon v. Rinaldi, No. 01-1571, 2006 WL 3421862, at *1 (D.P.R., November 28, 2006)(The parties requested and the court questioned the jury in the Special Verdict form to determine liability as to each defendant that had not accepted liability, and then determine the "internal liability" between each co-defendant found jointly liable.) Accordingly, defendants cannot ask that the Court now consider the Verdict as a determination of the total amount of the plaintiff's damages. The Rio Mar defendants had the opportunity to request special jury instructions and include a special verdict form to those effects yet they did not. The Jury was instructed to consider the liability and damages of the Rio Mar defendants **only**. Hence, their request to deduct the amount paid by the settling defendant must be denied. In sum, we find no error of law or fact that warrants altering the Judgment[6].

---

[6] The fact that the amount of damages that defendants will collectively pay is substantial does not alter the Court's conclusion. Mr. Fiorentino was a strong and healthy man until the fatal day of the accident which rendered him quadriplegic. Not only did the Fiorentinos spend considerable amounts of money in medical care and services to treat Mr. Fiorentino but also had to make changes to their home and environment to accommodate Mr. Fiorentino in view of his condition. For almost two years, Mr. Fiorentino suffered the inevitable consequences of living as a quadriplegic. It is more than reasonable to assume that his wife, plaintiff Fiorentino, suffered as a result of this tragic situation. Mr. Fiorentino eventually died. The triggering event that culminated in Mr. Fiorentino's demise was the accident at the Rio Mar Beach. It is alleged that UHS did not adequately stabilize Mr. Fiorentino upon arrival at the Hospital. In light of the possibility of an adverse jury verdict, UHS' settled the case for a considerable amount. The facts of the case clearly warranted such a high amount. Rio Mar chose to go to trial and have a jury of its peers determine its liability and responsibility for Mrs. Fiorentino's damages. Plaintiff presented her case and defendants defended themselves. The jury upon hearing the evidence found that plaintiff had proven by a preponderance of the evidence defendants' liability and awarded damages

Civ. No. 01-2653 (PG)                                                    Page 8

## II.  Motion to Dismiss the Cross Claim (Docket No. 150)

UHS moves to dismiss the cross claim filed by the Rio Mar defendants. It argues that pursuant to Zsendrey, Rio Mar cannot proceed with its cross claim in light of the settlement between UHS and plaintiff. (Docket No. 150.) Rio Mar opposes UHS's motion, rehashing the arguments raised in their motion to amend the judgment which the Court has already determined are without merit. Plaintiff agrees with UHS that following the decision in Zsendrey, the cross claim/third party action is superfluous.

The Court has reviewed the settlement agreement reached by Plaintiff and UHS. (Docket No. 137, Exh. 1 at p. 8.) As in Zsendrey, here, plaintiff freed UHS of any responsibility that it had or could have as a result of the facts giving rise to the complaint. Said waiver expressly includes any responsibility that UHS could have with the remaining co-defendants of the tort in a contribution (*nivelacion*) action. Specifically, plaintiff released UHS from

> any responsibility that may arise as a consequence of the original or the amended complaint or from any other complaint that is filed or may be filed in the future, including any contribution ("nivelacion") or third party or cross claim that could be or is being exercised in this case by the other co-defendants.

(Settlement Agreement §5.5, Docket No. 137, Ex. at p. 8.)

In light of plaintiff's clear intention, and the holding in Zsendrey, the Rio Mar defendants are precluded from proceeding with their cross-claim.

### III. Motion to Alter of Amend Judgment to Include a Finding of Obstinacy (Docket No. 139.)

Plaintiff moves to amend the judgment to include prejudgment interest and attorney's fees against the Rio Mar defendants pursuant to Rules 44.1 and 44.3

---

accordingly. The Court finds the jury's damages assessment reasonable.
    Even if the Court were to, pursuant to Zsendrey, determine the total amount of damages, the degree of contribution of each defendant, and the amount that matches the percentage of contribution that corresponds to the settling defendant, the evidence supports the amounts awarded. Rio Mar's degree of contribution, in light of the evidence and the holding in Merced, must be higher that UHS'. The record supports assigning to the Rio Mar defendants 60% of contribution and 40% to UHS. The total amount of plaintiff's damages is $3,244,000.00. Because plaintiff settled with UHS, the $1,400,000 would be subtracted from the total damage award. See Blas Toledo v. Hospital Nuestra Senora de La Guadalupe, et al., 2006 PRSC 47 (2006). Thus, Rio Mar would still pay $1,844,000.00. In sum, there is no reason to disregard the jury estimate of damages which is reasonably supported by the evidence.

Civ. No. 01-2653 (PG)                                                  Page 9

of the Puerto Rico Rules of Civil Procedure. Plaintiff argues that defendants' conduct in this case demands a finding of obstinacy with the subsequent imposition of attorney's fees.

The Puerto Rico Rules of Civil Procedure provide that "in the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct." P.R. Laws Ann. tit. 32, App. III, R. 44.1(d) (Supp. 1998). "Although the Rules do not themselves define obstinacy, there is ample case law within this Circuit to elucidate the concept." Correa v. Cruisers, A Division of KCS Int'l, Inc., 298 F.3d 13, 30 (1st Cir. 2002).

To make a finding of obstinacy, the court must determine that a litigant has been "unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay." Id. (quoting De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 126 (1st Cir. 1991)). If the Court finds that a party has been obstinate, "imposition of attorney's fees is mandatory. Correa, 298 F.3d at 30; see R. 44.1(d) (stating that the court "shall" impose attorney's fees in cases of obstinacy).

"The main purpose of awarding attorney's fees in cases of obstinacy is to impose a penalty upon a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation." Correa, 298 F.3d at 30-31 (quoting Fernandez Marino v. San Juan Cement Co., 18 P.R. Offic. Trans. 823, 830 (1987)). Accordingly, "attorney's fees are appropriate when a party unnecessarily prolongs or complicates [a] litigation." Correa, 298 F.3d at 31 (citation omitted). Conduct considered obstinate includes: "denying all liability in answering a complaint, where the defendant later admits liability; raising inapplicable defenses; denying all liability when only the amount of damages sought is contested; and denying a fact, knowing it is true.") Id., (citation omitted). "Though the degree of obstinacy is the critical factor in determining whether attorney's fees are warranted, other factors to be weighed include, inter alia, the nature of the litigation, the legal issues involved, the time spent, and the efforts and

Civ. No. 01-2653 (PG)                                                   Page 10

abilities of the attorneys. Id.,(citing Velazquez Ortiz v. Universidad de Puerto Rico, 128 P.R. Dec. 234, 238 (1991)).

Plaintiff argues that from the case's inception, defendants have denied their evident liability forcing plaintiff to engage in many avoidable steps. In spite of plaintiff's good faith efforts to negotiate a settlement, as late as July 27, 2005, defendants never made a reasonable offer. They did not make a counteroffer, because according to their attorney, defendants felt that the parties were so far apart that it would be useless. (See Docket No. 139, Exhibit 1.) Plaintiff avers that defendants denial of liability is the most clear example of their obstinacy in handling this case. It is her position, that defendants' liability had been demonstrated by the testimony of the only fact witness in this case, Mr. Shawn Taft, and by defendants' own Incident Report, which corroborates Mr. Taft's account of the accident. The Incident Report was prepared by Mrs. Lizbeth Hiraldo, who testified in trial that the report was written after a thorough investigation of the events on December 7, 2000. Plaintiff argues that Mrs. Hiraldo's testimony also confirmed that the hotel knew that guests had access to the beach through various entrances that did not have a sign warning them of the dangerous water conditions. She further testified that Mr. Fiorentino had entered the beach through one of those entrances that did not have any warnings. Accordingly, plaintiff argues that defendants knew that Mr. Fiorentino had not seen the yellow flag at the so-called "main" entrance to the beach, and that he had not been appropriately warned of the dangerous ocean conditions that caused his accident. Plaintiff insists that the Rio Mar defendants knew that Mr. Fiorentino's accident had occurred due to the dangerous conditions of the water on the day of the accident and their failure to appropriately warn him of those conditions.

Plaintiff further claims that defendants' obstinacy is demonstrated by the fact that they were not able to produce any evidence at trial that challenged their liability to the Plaintiff or the inadequacy of the sign warning guests of the water conditions. Plaintiff's expert witness in oceanography and signage, Professor Richard Grigg, expressly stated that the hotel's only sign did not even comply with minimum standards of care. This testimony was uncontested by defendants. In closing arguments, defendants argued that warnings were not necessary on the day of the accident because it

was a beautiful day to go the beach, and that Mr. Fiorentino could have known about the water conditions just by looking at the beach. Plaintiff avers, however, that this statement clearly contradicts their own employee's testimony, Mr. Julio Santiago, and Mrs. Lizbeth Hiraldo, who testified that there was a yellow flag on the day of the accident, which meant that there was danger lurking in the water.

Plaintiff further claims that defendants did not present accurate evidence to the jury. They point to the portion of the testimony of Dr. Jorge Capella, defendant's only expert witness, that was stricken from the record because the Court found it to be misleading to the jury. This action on the Rio Mar defendant's part, plaintiff posits, undoubtedly mandates a finding of obstinacy.

With regards to the procedural history of the case, plaintiff argues that defendants' obstinacy is shown by the filing of two motions for summary judgment disguised as Motions in *Limine* filed four (4) days prior to trial. These motions were denied by the Court on the grounds that they were motions for summary judgment and tardy under the Rules of Civil Procedure. Furthermore, four (4) days prior to trial defendants announced for the first time that they were going to use two expert witnesses that plaintiff had decided not to use at trial. Plaintiff objected to that testimony and the Court sustained the objection because the expert witnesses were not announced according to Rule 26 of the Federal Rules of Civil Procedure and Local Rule 26. The Court did not permit the presentation of those witnesses at trial because in a status conference held on June 10, 2005, defendants' counsel had announced that they would not present any expert witness other than Dr. Capella.

Lastly, plaintiff refers to defendants' Response to her Motion in Limine. On June 24, 2005, plaintiff moved to exclude allegations that Mr. Fiorentino was purportedly bodysurfing the day of the accident.(Docket No. 106.) The Court granted plaintiff's request and held that Rio Mar's experts were precluded from testified that Mr. Fiorentino was at the time of the accident allegedly bodysurfing. (Docket No. 109.) In its order the Court stated: "To conclude, based on plaintiff's deposition, that Mr. Fiorentino has been in fact bodysurfing when the accident occurred is unreasonable and borders on the

Civ. No. 01-2653 (PG)                                                  Page 12

ludicrous". Plaintiff argues that defendants, in a desperate attempt to introduce those allegations at trial, obstinately used a portion of Mrs. Fiorentino's deposition. She insists this warrants a finding of obstinacy also.

To the contrary, defendants argue that they were not obstinate in their defense of the case. They claim that nobody witnessed the accident and that Mr. Taft had given three different versions of the events of the day of the accident.(Docket No. 140.) Defendants posit that Mr. Taft's three versions were so different and irreconcilable that it would lead any reasonable person to suspect that he was conforming his testimony to a given theory of liability. They insist that Mr. Taft's testimony was not reliable and that in light of his relationship to Mr. Fiorentino (who was like a father to him) he was obviously trying to help plaintiff prevail. Therefore, defendants argue that in view of the apparent normal conditions of the water and wave action the day of the accident, the lack of eye witnesses, Mr. Taft's unreliable testimony, and Dr. Capella's expert testimony regarding ocean conditions and waves, defendants were completely justified in defending this suit on the issue of liability. What is more, defendants riposte arguing that with regards to the damages aspect of the case, plaintiff has been obstinate. They argue that plaintiff stubbornly refused to account for the applicable setoff during settlement discussions. Plaintiff insists that defendants' contentions are nothing more than the theories they presented at trial and were rejected by the jury.

Obstinacy must "be judged in light of the overall circumstances of the particular case." Correa, 298 F.3d at 31 (citations omitted); see id. (citing Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co., 81 F. Supp. 2d 331, 334 (D.P.R. 2000)(recognizing that certain conduct may or may not be obstinate depending upon the particular stage of litigation or the particular case). Having carefully reviewed the record, the Court does not find defendants' conduct obstinate. Defendants adequately determined they had a cause worth fighting for even though ultimately, the jury found in plaintiff's favor. This fact, however, should not in and of itself move the Court to find that defendants were obstinate. The alternative would imply that anytime a defendant decides to go to trial and losses, a Court should automatically

Civ. No. 01-2653 (PG)                                                    Page 13

consider its decision as obstinate behavior.

The facts surrounding plaintiff's accident could lead a person to initially consider a number of reasonable alternatives as possible causes of the accident. It follows then that defendants' initial denial of liability is not obstinate but reasonable. What is more, the Court of Appeals for the First Circuit "has summarily rejected the argument that a defendant engages in obstinacy within the meaning of Rule 44.1(d) when it merely answers a complaint and denies negligence or responsibility for plaintiff's damages." Vazquez-Filippetti v. Banco Popular de P.R., 409 F. Supp. 2d 94, 99 (D.P.R. 2006)(citations omitted); see Mejias-Quiros v. Maxxam Property Corp., 108 F.3d 425, 429 (1st Cir.1997). Of course, as discovery progressed and further information surfaced, defendants were in a better position to determine their liability, if any, in the case. The parties tried in good faith to reach a settlement but they were too far apart. Defendants thus left their fate in the hands of the jury.

Plaintiff had her chance to present her case and fairly obtained a judgment in her favor. The fact that defendants did not produce any evidence at trial that successfully challenged plaintiff's theory of liability does not constitute obstinate conduct. Furthermore, the fact that evidence that defendants presented was stricken does not mean that they were being obstinate. These are events that ordinarily occur in jury trials and not necessarily mean that defendants are being obstinate. In sum, the Court cannot find that defendants were obstinate simply because they ultimately lost the case. See Vazquez-Filippetti, 409 F. Supp. 2d at 99 ("Irrespective of defendants' ultimate success, or lack thereof, ... defendants were entitled to try to prove their defenses before the jury"); Reyes v. Banco Santander de Puerto Rico, N.A., 583 F.Supp. 1444, 1446 (D.P.R. 1984)("The mere fact that a plaintiff recovers a jury verdict, without more, is not sufficient ground for an award of attorney's fees.")

Finally, defendants untimely filings a few days before the trial do not warrant a finding of obstinacy. The Court understands that its denial of said motions for untimeliness was sufficient to punish defendants for their lack of diligence in litigating their case. Likewise, with regards to defendants' insistence on claiming that Mr. Fiorentino was bodysurfing at the

Civ. No. 01-2653 (PG)                                               Page 14

time of the accident, striking such arguments and precluding defendants from presenting them at trial, was sufficient to sanction them for their misleading argument.

Having thoroughly reviewed the record, the Court finds that defendants were not stubbornly litigious or unreasonably adamant. See De Leon Lopez, 931 F.2d at 126. Plaintiff indeed had to incur in some expenses to respond to defendants' motions but these expenses are the kind that plaintiffs ordinarily incur in order to move their case forward. Because we find that defendants' actions were not beyond those acceptable as part of the demands of the litigation, we deny plaintiff's motion to impose prejudgment interest and attorneys' fees.

## CONCLUSION

WHEREFORE, for the preceding reasons, the Court **DENIES** defendants' motions to alter or amend the judgment **(Docket No 137 & 138)**, **DENIES** plaintiff's motion to alter the judgment **(Docket No. 139)** and **GRANTS** third party defendants' motion to dismiss the cross claim **(Docket No. 150.)** Having dismissed the remaining cross claim (Docket No. 81), judgment shall be entered closing the case.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, April 3, 2007.

                                        S/JUAN M. PEREZ-GIMENEZ
                                        U. S. DISTRICT JUDGE